```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SULZER MIXPAC USA, INC. et al.,               :
                                              :
                Plaintiffs,                   :    09 Civ. 9705 (DAB) (GWG)
                                              :
      -against-                                    REPORT AND
                                              :    RECOMMENDATION
SHANGHAI NSJ HARDWARE LTD.,                   :
                                              :
                Defendant.                    :
-----------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Sulzer Mixpac USA, Inc. and Sulzer Mixpac AG ("Sulzer" or "Mixpac") sued Shanghai NSJ Hardware Ltd. ("NSJ") and other defendants for trademark, trade dress and patent infringement, among other claims. NSJ failed to answer and the district judge entered a default judgment and a permanent injunction against it. After NSJ violated the injunction by continuing to sell infringing products, the district judge found NSJ in civil contempt and referred the matter to the undersigned for the purposes of determining any civil contempt sanctions. For the reasons stated below, NSJ should be required to pay damages of $500 to Sulzer and to pay a $5,000 fine to the Clerk of the Court.

I. BACKGROUND

Sulzer's amended complaint alleged (1) trademark and trade dress infringement under 15 U.S.C. § 1125(a); (2) federal unfair competition under 15 U.S.C. § 1125(a); (3) false designation of origin under 15 U.S.C. § 1125(a); (4) violation of N.Y. Gen. Bus. Law § 349; (5) violation of N.Y. Gen. Bus. Law § 350; (6) violation of N.Y. Gen. Bus. Law § 360-l; (7) common law trademark and trade dress infringement; (8) common law unfair competition; and (9) patent infringement. See Amended Complaint, filed Nov. 30, 2009 (Docket # 3) ("Am. Compl."). NSJ

was served but failed to answer, and the district judge entered a default judgment and permanent injunction against NSJ.  See Default Judgment and Permanent Injunction, dated Jan. 26, 2011 (Docket # 21) ("Default Judgment and Permanent Injunction").  By virtue of NSJ's default, the allegations in the Amended Complaint are deemed to be true.  See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).

As explained in the Amended Complaint, Sulzer manufactures a "patented three-part system for mixing two-part adhesives for dental and industrial applications."  Am. Compl. ¶ 9.  The system consists of "a dispenser, much like a caulking gun . . . a cartridge containing a two part chemical . . . and a mixing tip that mixes the chemicals before they are applied for making, for example, an impression or mold for teeth."  Id.  Since at least 1997, Sulzer has used a "distinctive dome shape and color coded design Mark for its mixing tips," id. ¶ 10, and Sulzer's "Colored Dome design Mark has been used to identify [its] dental mixing system and tips," id. ¶ 11.  Sulzer's trade dress also consists of "six pleasing 'candy-like' colors of yellow, teal, blue, pink, purple, and white to match the corresponding colored cartridge cap, as well as the orange corkscrew like element."  Id. ¶ 12.  The Mixpac Colored Dome Mark and Mixpac Trade Dress are "non-functional," id. ¶ 13, and "have acquired secondary meaning as the relevant public has come to associate the [mark and trade dress] with . . . [Sulzer]," id. ¶ 14.  NSJ copied the mark and trade dress, "including each of the candy colors" in order to "intentionally confuse consumers into believing the counterfeit products are manufactured or licensed by [Sulzer]."  Id. ¶ 15.  These copied products are "of a lesser quality and safety and reliability, and threaten [Sulzer's] reputation . . . to the detriment of [it] and the public."  Id. ¶ 16.  Additionally, Sulzer owns four patents on the mixing tips, cartridge, and dispenser used in its products.  Id. ¶¶ 18-22.  NSJ has sold mixing tips, cartridges, and dispensers that not only infringe the Colored Dome

Mark and Trade Dress, but also the four patents owned by Sulzer.  Id. ¶ 23.

The Default Judgment and Permanent Injunction, issued on January 26, 2011, provided, inter alia, that NSJ was

> enjoined and permanently restrained from:
>
> (i) making, using, importing, selling and/or offering for sale any mixing tips that infringe any claims of U.S. Patent Nos. 5,918,772 and 6,186, 363;
>
> (ii) selling, offering for sale, distributing or advertising any mixing tips that infringe The Colored Dome Mark and Mixpac Trade Dress, or any colorable imitations thereof including, but not limited to, on any websites used or controlled by Shanghai NJS [sic] Hardware Ltd.;
>
> (iii) assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities described in paragraphs (i) through (ii) above.

Default Judgment and Permanent Injunction at 3.  It did not require NSJ to pay any money to Sulzer.

About 28 months after it obtained the Default Judgment and Permanent Injunction, Sulzer provided evidence to the Court that notwithstanding the injunction, NSJ had continued selling and advertising infringing products.  See Motion for an Order to Show Cause re Civil Contempt, dated June 3, 2013 (Docket # 23) ("Show Cause Motion"); Memorandum of Law in Support of Motion for an Order to Show Cause re Civil Contempt, filed June 3, 2013 (Docket # 26); Declaration of Michael T. Murphy ("Murphy Decl."); Declaration of Robert Zisel ("Zisel Decl.").  The continued infringing conduct consisted of: (1) NSJ's sale of infringing mixing tips to UC Dental Products of Los Angeles, California on August 24, 2012; (2) NSJ's sale of infringing mixing tips to Sulzer's investigator in New York, New York on August 22, 2012; (3) NSJ's advertisement of infringing mixing tips on several websites directed at the United States; and (4) NSJ's sale of infringing mixing tips to Sulzer's investigator on Ebay on January 7, 2013.

See Show Cause Motion at 3; Murphy Decl. ¶¶ 2-7, 9-12; Zisel Decl. ¶¶ 3-6, 8-11.

In response to the evidence provided by Sulzer, the district judge issued an order to show cause why NSJ should not be found in violation of the Default Judgment and Permanent Injunction. See Order to Show Cause for Civil Contempt of Permanent Injunction, dated May 31, 2013 (Docket # 22) ("Order to Show Cause"). NSJ was served with the Order to Show Cause and Sulzer's papers, but it never responded. See Return of Service, dated June 4, 2013 (Docket # 27). The district judge found NSJ in civil contempt of the injunction due to its infringing conduct. See Order for Civil Contempt of Permanent Injunction Against Shanghai NSJ Hardware Ltd. and for Sanctions, dated July 11, 2013 (Docket # 30) ("Contempt Order"). The Order referred Sulzer's request for damages and a fine to the undersigned. Id. at 3.

On July 17, 2013, the undersigned issued an order directing Sulzer to submit proposed findings of fact and supporting documentation concerning the proposed damages and fine. See Order, dated July 17, 2013 (Docket # 31) ("July 17 Order") ¶ 2. A copy of the July 17 Order and Sulzer's papers were served on NSJ by email and overnight courier to an address in Shanghai, China, and an address in Las Vegas, Nevada.[1] See Return of Service, filed Aug. 26, 2013 (Docket # 35). NSJ never submitted any papers in response.

For its part, Sulzer has submitted proposed findings of fact and a memorandum of law, along with four declarations and supporting documentary evidence. See Letter, Proposed Findings of Fact, and Memorandum of Law, filed Aug. 26, 2013 (Docket # 33) ("Pl. Mem.");

---

[1]The July 17 Order required Sulzer to serve NSJ "by mail at the last known address." Id. ¶ 1. While Sulzer does not explain its choice to mail the papers to the address in Las Vegas in addition to the address in Shanghai, it appears that it selected the Las Vegas address because Sulzer had previously effectuated in-person service of the original summons and complaint at this location while NSJ was attending the "World of Concrete Show." See Return of Service, filed Feb. 18, 2010 (Docket # 13).

4

Murphy Decl.; Supplemental Declaration of Michael T. Murphy ("Murphy Sanction Decl."); Declaration of Shawn Kang (annexed as Ex. 1 to Murphy Decl.) ("Kang Decl."); Zisel Decl. These submissions request that the Court award $500 in damages and impose a $5,000 fine on NSJ. Pl. Mem. at 1.

"Ordinarily, a hearing is required before a court may award civil contempt sanctions," but "[n]o hearing is required . . . where there are no material facts in dispute." New York State Nat. Org. for Women v. Terry, 697 F. Supp. 1324, 1330 n.6 (S.D.N.Y. 1988) (citations omitted). Because NSJ has not appeared in this action to dispute the facts proffered by Sulzer in support of the motion for sanctions, no hearing is required. Additionally, the July 17 Order notified the parties that the Court would conduct the proceeding based upon the written submissions of the parties unless a party sought an evidentiary hearing. July 17 Order ¶ 3. Neither party has requested such a hearing.

Although NSJ has not opposed the instant motion for contempt sanctions, the Court has the responsibility to ensure that the damages and fine sought by Sulzer are appropriate. See, e.g., New York v. U.S. Capital Funding, LLC, 2011 WL 3489914, at *7 (E.D.N.Y. Aug. 9, 2011) ("Although the motion [for sanctions after finding civil contempt of a consent decree] is unopposed, the Court has independently ensured that the sanctions imposed by the Court are legally and factually supported.").

II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 657 (2d Cir. 2004) (citing Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir.

1989)); accord Chere Amie, Inc. v. Windstar Apparel Corp., 175 F. Supp. 2d 562, 566 (S.D.N.Y. 2001) ("The purpose of civil contempt sanctions is coercive and compensatory rather than punitive.") (citing Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995)).

"To the extent that a contempt sanction is coercive, the court has 'broad discretion to design a remedy that will bring about compliance.'" Paramedics Electromedicina, 369 F.3d at 657 (quoting Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir.1982)).  By contrast, "[i]f the fine is compensatory in purpose," and is "paid directly to the other party rather than the court," the district court's discretion is more circumscribed. Id. at 658.  In such a situation, "the sanction should correspond at least to some degree with the amount of damages," id. (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1062 (2d Cir. 1995)), and "some proof of loss must be present to justify [the] compensatory aspects" of the sanction," id. (quoting New York State Nat. Org. for Women, 886 F.2d at 1353).  Notwithstanding this general rule, the Second Circuit has held in the case of a plaintiff seeking sanctions for violation of an injunction in a trademark infringement case that the plaintiff was "entitled to defendant's profits without submitting direct proof of injury." Manhattan Indus., Inc., 885 F.2d at 6; accord Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 2007 WL 2982295, at *5 (S.D.N.Y. Oct. 10, 2007) ("A contempt plaintiff need not demonstrate actual injury to receive compensatory damages, but is entitled under a theory of unjust enrichment to the profits derived by a contemnor from violation of a court order.") (citations omitted); U2 Home Entertainment, Inc. v. Hong Wei Intern. Trading, Inc., 2005 WL 3766976, at *7 (S.D.N.Y. May 3, 2005) (same).

Importantly, "sanctions for civil contempt can be imposed without a finding of wilfulness." Manhattan Indus., Inc., 885 F.2d at 5 (quoting Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd., 869 F.2d 34, 39 (2d Cir. 1989)).

A.  Damages

Sulzer seeks a compensatory sanction of $500 for NSJ's civil contempt.  See Pl. Mem. at 3.  This figure is based on Sulzer's estimate that NSJ earned a profit in that amount when it made the sale of infringing products to UC Dental in August 2012, in violation of the Default Judgment and Permanent Injunction.  Id.  In support of its request for profits, Sulzer submits the affidavit of Shawn Kang, who is apparently associated with UC Dental.  See Kang Decl.; Murphy Decl. ¶ 5.  Kang states that UC Dental purchased infringing mixing tips from Shanghai NSJ.  Kang Decl. ¶ 1.  He annexes an invoice dated August 12, 2012, which indicates that the sale involved 200 bags of "6# [sic] blue mixing tip[s]" containing "50 pcs [per] bag" for a total sale (not including shipping costs) of $900.  See Proforma Invoice (annexed as Ex. A to Kang Decl.).  Based upon Murphy's "knowledge of similar manufacturers of copied mixing tips gained through related litigation and discovery," he concludes that "NSJ earns an estimated 5¢ profit per mixing tip sold."  Murphy Decl. ¶ 33.  As a result, "based upon NSJ's sales of approximately 10,000 mixing tips to UC Dental, NSJ has earned an estimated profit of $500.00."  Id.

While Sulzer's estimate for the profit per mixing tip involves some degree of guesswork, it does not result in a large damages figure, and in light of NSJ's failure to provide any information on the question of its profits, we will accept Sulzer's estimate.  See, e.g., Chloe v. Zarafshan, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) (If the actual sales of an infringer "cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's . . . failure to produce documentary evidence.") (citation omitted); GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *6 (S.D.N.Y. July 20, 2009) (Plaintiff's estimates of defendant's profits are

7

"reasonable and have some evidentiary support. Any imprecision in calculating Defendant's profits is the fault of Defendants, who failed to participate in this litigation."); RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862 (S.D.N.Y. 1984) ("Any information which may be available on the exact amount of profits or damages is entirely in the hands of the defendants. They are the only ones capable of interpreting their own production records . . . They have chosen to remain silent. Plaintiffs should not be penalized thereby."). Thus, we conclude that NSJ earned a profit of $500 on the sale of infringing mixing tips made to UC Dental on August 24, 2012, and find this to be an appropriate figure to award as damages for the violation of the injunction.

    B.  Fine

Sulzer also seeks the imposition of a $5,000 fine against NSJ "to ensure its future compliance with this court's orders." Pl. Mem. at 3. The basis for this request is that "NSJ has disregarded this court's Judgment and continues to violate [Sulzer's] intellectual property rights even today after service of the Order of Contempt." Id. at 4. Before imposing a coercive sanction against a contemnor, a court "must . . . explicitly consider (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." Dole Fresh Fruit Co. v. United Banana Co., Inc., 821 F.2d 106, 110 (2d Cir. 1987). "The ultimate consideration is whether the coercive sanction — here, a fine — is reasonable in relation to the facts. That determination is left to the informed discretion of the district court." New York State Nat. Org. for Women, 886 F.2d at 1353. Moreover, a court is "free to consider the full record in the case in order to choose the appropriate sanction." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010).

Analyzing these factors, we find Sulzer's proposal of a $5,000 fine to be reasonable. First, Sulzer has submitted evidence that multiple instances of infringing activity have occurred after the entry of the Default Judgment and Permanent Injunction and later the Contempt Order. NSJ has made several sales of infringing tips to Sulzer's investigator in New York, both through direct contact and through Ebay. See Zisel Decl. ¶¶ 4, 8; Ebay Order Documents (annexed as Ex. A to Zisel Decl.); Proforma Invoice (annexed as Ex. B to Zisel Decl.). Additionally, NSJ has continued advertising the infringing products on various websites as of August 25, 2013, in violation of the Default Judgment and Permanent Injunction.[2] See Murphy Sanction Decl. ¶ 2; Webpage Screenshots (annexed as Ex. 1 to Murphy Sanction Decl.). The fact that NSJ has sold infringing products so readily in the past is a strong indicator that it will continue to do so in the future.

Second, in light of NSJ's failure to participate in this litigation and its continued acts of infringement, there is no reason to believe that compliance with the Default Judgment and Permanent Injunction will be forthcoming without the imposition of some coercive measure. Cf. Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 2004 WL 2550313, at *7 (E.D.N.Y. Nov. 9, 2004) (fine deemed appropriate sanction, even in absence of ill-gotten revenues from offending conduct, where the "in terrorem effect of the injunction itself, that is, the prospect of contempt proceedings upon noncompliance" had been an "insufficient incentive" to obey the injunction).

Finally, a $5,000 fine is a conservative figure given that NSJ has declined to provide any

---

[2]The Default Judgment and Permanent Injunction forbids NSJ from, inter alia, advertising infringing mixing tips "on any websites used or controlled" by NSJ. Default Judgment and Permanent Injunction at 3.

9

information at all as to its financial resources or ability to pay a fine. "The alleged contemnor bears the burden of producing evidence of his inability to comply," and "[i]f he offers no evidence as to his inability to comply . . . or stands mute, he has not met his burden." Huber, 51 F.3d at 10 (citations and internal quotation marks omitted); accord Capital Funding, 2011 WL 3489914, at *9 ("[Defendant] has willfully failed to respond to [plaintiff's] motion or appear at the hearings scheduled by the Court, and, thus, defendant has offered no evidence that it is unable to pay [the requested] fine."). Thus, we find that a $5,000 fine is an appropriate measure to secure NSJ's compliance with the Default Judgment and Permanent Injunction. Cf. Merkos L'Inyonei, 2004 WL 2550313, at *7 (imposing $10,000 coercive fine for violation of preliminary injunction in copyright case); Chere Amie, 175 F. Supp. 2d at 567 (imposing $25,000 coercive fine for violation of preliminary injunction with additional fine of $10,000 per day if defendant failed to recall infringing goods in trademark and copyright case).

III.  CONCLUSION

For the foregoing reasons, Sulzer should be awarded $500 in damages and NSJ should be ordered to pay a $5,000 fine to the Clerk of the Court.

### PROCEDURE FOR FILING OBJECTIONS TO THIS
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah Batts, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be

directed to Judge Batts. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 12, 2013
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Shanghai NSJ Hardware, Ltd.
Building 3
No. 488, Fengzhong Rd.
Fengxi Town, Qingpu District
Shanghai 201705
China

Counsel by ECF

11